IN THE COURT OF COMMON PLEAS WESTMORELAND COUNTY, PENNSYLVANIA

GALEN E. KALP and VIRGINIA M. KALP, husband and wife, and GLENLYN E. KALP and AUDREY J. KALP, husband and wife,
   Plaintiffs

-vs-

WPX ENERGY APPALACHIA, LLC,
   Defendant

) CIVIL DIVISION
)
) CASE NUMBER: 2460 OF 2012
)
) TYPE OF PLEADING:
)
) **COMPLAINT**
)
) CODE AND CLASSIFICATION:
)
) FILED ON BEHALF OF: PLAINTIFFS
)
) NAME AND ADDRESS AND TELEPHONE
) OF COUNSEL OF RECORD FOR THIS
) PARTY:

JAMES S. LEDERACH
Attorney at Law
201 North Chestnut Street
P.O. Box 342
Scottdale, Pennsylvania 15683
Telephone: (724) 887-3600

ATTORNEY'S STATE ID#: 37570

NUMBER OF PAGES TO BE FILED:

**JURY TRIAL DEMANDED**

FILED IN Prothonotary's Office
APR 2 0 2012
By: CLERK


EXHIBIT A

IN THE COURT OF COMMON PLEAS
WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL ACTION-EQUITY

GALEN E. KALP and VIRGINIA M. )
KALP, husband and wife, and GLENLYN )
E. KALP and AUDREY J. KALP, husband )
and wife, )
   Plaintiffs ) No.
 )
   -vs- )
 )
WPX ENERGY APPALACHIA, LLC, )
   Defendant )

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
Westmoreland County Bar Association
P.O. Box 565
Greensburg, Pennsylvania 15601
Telephone: (724) 834-8490
http://lrs.westbar.org

IN THE COURT OF COMMON PLEAS
WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL ACTION-EQUITY

GALEN E. KALP and VIRGINIA M. )
KALP, husband and wife, and GLENLYN )
E. KALP and AUDREY J. KALP, husband )
and wife, )
    Plaintiffs ) No.
     )
    -vs- )
     )
WPX ENERGY APPALACHIA, LLC, )
    Defendant )

## COMPLAINT

AND NOW come plaintiffs, GALEN E. KALP and VIRGINIA M. KALP, husband and wife, and GLENLYN E. KALP and AUDREY J. KALP, husband and wife, by and through their attorney, James S. Lederach, and aver as follows:

1. In 2006 plaintiffs leased their 123 acre farm to Dorso, LP, a Pennsylvania limited partnership. Because plaintiffs signed the lease before the Marcellus shale gas boom in Pennsylvania, they had never heard of unconventional gas production from shale. In fact, the first major horizontal drilling for shale gas in Pennsylvania would not occur until later in 2007. When read with precision, furthermore, most of the terms of the Dorso lease are geared to the conventional gas production from shallow reservoirs of limited area. As a result, plaintiffs did not contemplate that under the Dorso lease 22% of their land could be taken in perpetuity without compensation for a massive horizontal drilling and hydro-fracturing complex for producing natural gas from the Marcellus shale. In the spring of 2011, however, defendant WPX Energy Appalachia, LLC, as successor to the interests of lessee under the Dorso lease, began to construct such a Marcellus shale gas production hub on plaintiffs' land. Since then, WPX has constructed a 27 acre drilling site from which it intends to drill and hydro-fracture an unlimited number of horizontal well shafts each more than two miles in length in order to drain and transport natural

3

gas from at least 1,300 acres of adjoining lands for removal on the surface of the plaintiffs' land. The Dorso lease, however, does not authorize such extensive use of the surface and subsurface of the plaintiffs' land. Plaintiffs bring this action to prevent defendant WPX Energy Appalachia, LLC from using their land in a way not permitted by the 2006 oil and gas lease with Dorso and for damages for such unauthorized use.

### The Parties

2. Plaintiffs Galen E. Kalp and Virginia M. Kalp, husband and wife, reside at 1171 Route 711, Stahlstown, Westmoreland County, Pennsylvania 15687; and plaintiffs Glenlyn E. Kalp and Audrey J. Kalp, husband and wife, reside at 200 Beech Drive, Ligonier, Westmoreland County, Pennsylvania 15658 (the "Kalps").

3. Defendant WPX Energy Appalachia, LLC is a Delaware limited liability company with its principal place of business located at One Williams Center, Suite 2600, Tulsa, OK 74172 (hereinafter "WPX"). WPX was formerly known as and is the successor to Williams Production Appalachia, LLC ("Williams" or "WPX") which changed its name to WPX in 2011. WPX regularly and continuously conducts business in the Commonwealth of Pennsylvania, and maintains an office at 100 Town Center Way, Suite 130, Canonsburg, PA 15317.

### The Facts

4. The Kalps own approximately 123.70 acres of land located at 322 Lake View Drive, Donegal Township, Westmoreland County known as Westmoreland County Tax Map Number 46-07-00-0-039 (the "Kalp Land"). The Kalp Land is more fully described in the Office of the Westmoreland County Recorder of Deeds at Deed Book Volume 2313, page 987.

5. The Kalp Land is subject to an "Oil and Gas Lease" made by the Kalps in favor of Dorso LP, a Pennsylvania limited partnership ("Dorso"), dated June 30, 2006, effective July 6, 2006, and recorded in the Office of the Westmoreland County Recorder of Deeds as Instrument Number 200801220002711 (the "Lease"). The Lease created a primary term of five (5) years expiring July 5, 2011. A true and correct copy of the Lease is attached hereto as Exhibit A.

6. WPX has succeeded to the interests of Dorso as lessee under the Lease by virtue of (a) an Assignment Agreement made by Dorso to Longfellow Energy, LP, a Texas limited partnership, dated July 9, 2010, a Memorandum of which is recorded in the Office of the Westmoreland County Recorder of Deeds as Instrument Number 201008110027957; and (b) an Assignment, Bill of Sale and Conveyance made by Longfellow Energy, LP to Williams dated November 17, 2010 and recorded in the Office of Westmoreland County Recorder of Deeds as Instrument Number 201012060045132.

7. By the Lease the Kalps "leased and let" the Kalp Land unto Dorso, now WPX, "for the purpose of drilling and operating for and producing oil and gas...in and under (the Kalp Land)."

8. In connection with such production operations the Kalps "granted, bargained and sold (unto WPX)...all of the gas produced and recovered under the terms (of the Lease)," except for such natural gas as Kalps reserved for their own use under Paragraph 6 of the Lease, and subject to the royalty provisions contained in Paragraph 4.

9. Paragraph 4 of the Lease obligates WPX to pay the Kalps a _"royalty" equal to "one-eighth (1/8) of the value of all gas produced, saved and marketed...for or on account of wells producing gas_ (on the Kalp Land)." (Emphasis supplied.)

10. In Paragraph 3 of the Lease the Kalps "granted" Dorso and its successor WPX "the right to pool and unitize...all or any part of (the Kalp Land) with any other leases, land or lands, mineral estates, or any of them whether owned by Lessee or others, so as to create *one or more drilling or production units*..." (Emphasis supplied.)

11. According to the Lease, the effect of such pooling or unitization of the Kalp Land would be that production activity "on any portion of (a unit created under the terms of the Lease) shall have the same effect upon the terms of this lease as if a well were commenced, drilled, completed or producing on the land described." In other words, the purpose of the pooling or unitization language of the Lease is to allow WPX to discharge its production obligations and

5

extend the Lease beyond its primary five year term by engaging in production operations anywhere within a unit or pool created under the Lease.

12. In the event of proper pooling or unitization of their land under Paragraph 3 of the Lease, the Kalps agreed that the one eighth (1/8) royalty which WPX agreed to pay in Paragraph 4 would be diluted according to the "proportion...as the number of acres out of the lands covered by (the Lease), which may be included from time to time in any such unit, bears to the total number of acres included in such unit."

13. WPX's contractual power to pool or unitize the Kalp Land with other lands under the Lease is expressly limited: First, the power applies only to "*the strata under*" the Kalp Land. Second, the total area of "such drilling or production units *shall not exceed 640 acres in extent*." (Emphasis supplied.)

14. When the Kalps signed the Lease on June 30, 2006 the parties contemplated and understood that Dorso as lessee would use the Kalp Land for the drilling of so-called conventional or shallow gas wells. In fact, Dorso's landman promised that it would complete the drilling of a shallow gas well by January, 2007 and that by July, 2007 the Kalps would start receiving the natural gas they had reserved for domestic use in Paragraph 6 of the Lease.

15. Dorso, however, never conducted any such conventional or shallow gas drilling or production operations on the Kalp Land from 2006 until it assigned its interest as lessee under the Lease to Longfellow Energy in July, 2010.

16. Only in May, 2011 did WPX begin operations on the Kalp Land. At that time, WPX began to construct a Marcellus shale horizontal well drill site consisting of a well pad, drilling mud reserve pits, drill pad fresh water reserve pits, natural gas gathering lines, access roads to the well pad and retention ponds, culverts and drainage trenches, and associated well head and production equipment collectively referred to by WPX as the "Kalp 1H East Pad Location" (the "Kalp Pad"). WPX constructed the Kalp Pad and its appurtenances on approximately twenty-

seven (27) acres of the Kalp Land and has so far paid the Kalps no compensation whatsoever for their land.

17. On October 17, 2011 WPX began actual operations to drill a horizontal Marcellus shale well into and underneath lands adjoining the Kalp Pad.

18. WPX has designated approximately 42 acres of the Kalp Land including the Kalp Pad as a part of a 635 acre operating unit known as Unit No. 6-Kalp (the "Kalp Unit 1"). In connection with its designation of the Kalp Unit 1, WPX made a "Declaration of Pooling and Unitization" dated June 17, 2011 which is recorded in the Office of the Westmoreland County Recorder of Deeds as Instrument Number 201106210021686.

19. WPX has also designated or intends to designate the Kalp Land and the Kalp Pad as part of a second "Kalp South" operating unit consisting of approximately 640 acres (the "Kalp Unit 2").

20. By virtue of such designations, WPX has pooled or will pool or unitize the Kalp Land the 27 acre Kalp Pad as a part of both Kalp Units 1 and 2 which together exceed 640 acres in extent. In addition, WPX may intend to designate the Kalp Land as a part of other pooled or unitized operating units under the Lease.

21. The pooling and unitization provisions of the Lease which apply only to the substrata beneath the Kalp Land pad neither expressly nor by implication render the surface of the Kalp Land servient to subterranean units or pools created under the Lease.

22. WPX, nevertheless, plans to use the Kalp Pad to drill at least ten (10) and more Marcellus shale horizontal well shafts extending generally north and south from the Kalp Pad into and underneath the adjoining lands comprising Kalp Units 1 and 2, and possibly other units.

23. Each such Marcellus shale horizontal well will have a vertical and a horizontal component. The wells will be drilled first vertically to depths of up to about 8,300 feet and then outward from the Kalp Land in horizontal shafts with lengths of up to almost 13,500 feet.

7

24. At the end of these well shafts WPX will drill horizontal laterals between 4,000 and 5,500, no part of which will lie beneath the Kalp Land. These horizontal laterals will be the only portion of the Marcellus shale well shafts drilled from the Kalp Pad that WPX will stimulate by hydro-fracturing operations. As such, WPX will drain and produce natural gas only from the Marcellus shale formations surrounding these horizontal laterals.

25. The producing horizontal laterals will be connected to the Kalp Pad on the surface of the Kalp Land by non-producing vertical and non-vertical or angled well shaft sections. Because the combined horizontal lengths of the non-producing, non-vertical or angled well sections extend beyond the boundaries of the Kalp Land, none of the natural gas to be removed through the well heads WPX has constructed or will construct on the Kalp Pad will be drained from Marcellus shale formations subjacent to the Kalp Land. Instead, the well shafts drilled on and from the Kalp Pad will be used to transport natural gas drained from adjoining lands beneath the Kalp Lands for removal through the well heads constructed on the Kalp Pad.

26. Although the Kalps agreed in the Lease that the lessee, now WPX, could use the surface of the Kalp Land to drill well shafts to reach natural gas to be drained from beneath the Kalp Land, the Lease simply does not authorize WPX to use the surface of the Kalp Land as a hub for drilling an unlimited number of horizontal gas wells and laterals through which to drain and transport natural gas from Marcellus shale formations lying entirely beneath adjacent lands

27. Although the Kalps agreed in the Lease that the lessee, now WPX, would have broad rights to transport gas from any source "across *and* through" the Kalp Lands, the Lease does not permit WPX to use the subsurface of the Kalp Land for the transportation of natural gas drained from horizontal well shaft laterals drilled beneath adjoining lands for removal through well heads constructed on the Kalp Pad.

**Count I**
*Preliminary and Permanent Injunction*

28. The allegations contained in Paragraphs 1 through 27 are incorporated by reference as if more fully set forth at length herein.

29. The Lease neither expressly nor implicitly authorizes WPX as lessee to use the surface of the Kalp Land without any compensation whatsoever (a) to construct and to operate a 27 acre natural gas drilling hub (b) from which to drill an unlimited number of horizontal gas well shafts (c) each extending from the Kalp Pad up to two miles and more beneath adjoining lands for the purpose (d) of draining natural gas produced from Marcellus shale lying entirely beneath such distant adjoining lands, and (e) of transporting such gas drained from adjoining lands underneath the Kalp Lands, (f) for removal through well heads constructed on the surface of the Kalp Land.

30. The Kalps have not agreed to, consented to, or otherwise ratified such use of their land by WPX.

31. WPX's use of the surface and subsurface of the Kalp Land is a continuing trespass not compensable by money damages.

WHEREFORE, plaintiffs Galen E. Kalp and Virginia M. Kalp, husband and wife, and Glenlyn E. Kalp and Audrey J. Kalp, husband and wife, demand this Court: (a) to declare that the Lease does not authorize WPX Energy Appalachia, LLC to use the Kalp Land for the drilling and production activities described herein; (b) to preliminarily and permanently enjoin defendant WPX Energy Appalachia, LLC from operating the Kalp Land in such manner not authorized by the Lease; (c) to order WPX Energy Appalachia, LLC to cap, plug and abandon all Marcellus shale wells drilled on the Kalp Pad and not authorized by the Lease; (d) to order WPX Energy Appalachia, LLC to restore the plaintiffs' land to its original condition before the construction of the drilling pad for purposes not authorized by the Lease; and (e) to grant any other appropriate equitable relief including costs, expenses, and counsel fees.

### Count II
*Breach of Contract/Declaratory Judgment*

32. The allegations contained in Paragraphs 1 through 31 are incorporated by reference as if more fully set forth at length herein.

33. WPX's right under the Lease to unitize or to pool the Kalp Land with other leases, lands or mineral estates is limited to the creation of drilling or production units of no more than 640 total acres. However, WPX has designated and plans to designate the surface and the substrata of the Kalp Land as a part of multiple or successive units with combined area substantially greater than 640 acres.

34. WPX's power to unitize or to pool the Kalp Land with other leases, land or mineral estates is limited to the "strata" underneath the Kalp Land. As a result, WPX's unitization or pooling of the Kalp Land does not render the surface of the Kalp Land servient to subterranean units or pools created under the Lease.

35. The Kalps have not agreed to, consented to, or otherwise ratified such unitization or pooling of their land by WPX.

WHEREFORE, plaintiffs Galen E. Kalp and Virginia M. Kalp, husband and wife, and Glenlyn E. Kalp and Audrey J. Kalp, husband and wife, demand this Court to (a) declare that the Lease does not authorize defendant WPX Energy Appalachia, LLC to pool or unitize the Kalp Land in the manner described herein, and (b) to award the Kalps as a result of such breach a full and undiluted one-eighth (1/8) royalty on all of the natural gas "produced, saved and marketed" from wells on the Kalp Land as provided in Paragraph 4 of the Lease, together with such other damages or measure of damages as may be established at trial.

### Count III
*Breach of Contract*

36. The allegations contained in Paragraphs 1 through 36 are incorporated by reference as if more fully set forth at length herein.

37. The Lease obligates WPX, as the successor to the interests of the lessee Dorso under the Lease, to compensate the Kalps for all damage to the surface of the Kalp Lands "caused (by WPX) in operating the Lease."

38. Although WPX has constructed the Kalp Pad thereby taking and rendering useless to the Kalps in perpetuity approximately 27 acres of their land, WPX has failed to pay the Kalps any compensation for such past, present and future use of their land.

39. The amount in controversy exceeds $50,000.

WHEREFORE, plaintiffs Galen E. Kalp and Virginia M. Kalp, husband and wife, and Glenlyn E. Kalp and Audrey J. Kalp, husband and wife, demand this Court to enter judgment in their favor and against defendant WPX Energy Appalachia, LLC for such past, present and future damages to their land as may be established at trial, together interest, costs, expenses, and counsel fees.

**JURY TRIAL DEMANDED**

_____
James S. Lederach
Pa. I.D. No. 37570
201 North Chestnut Street
P.O. Box 342
Scottdale, Pennsylvania 15683
Telephone: (724) 887-3600
Facsimile: (724) 887-0822
lederachlaw@zoominternet.net

11

## **VERIFICATION**

I verify that the statements made in this Complaint are true and correct; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of Plaintiff. I have read the Complaint and to the extent that the Complaint is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information, and belief. To the extent that the content of the Complaint is that of counsel, I have relied upon counsel in making this verification. I understand that false statements herein made are subject to the penalties of 18 Pa. C.S. A. Section 4904, relating to unsworn falsifications to authorities.

Dated: 3-20-12

_____
GALEN E. KALP

Dorso LP
Wexford Professional Bldg.
11676 Perry Highway Suite 1300
Wexford, PA 15090

**Map Reference**

N ..........................
E ..........................
Renewal of No. ..........................
New ..........................

# OIL AND GAS LEASE



I hereby CERTIFY
that this document is
recorded in the
RECORDER'S OFFICE
of Westmoreland County
Pennsylvania

*from*

Galen E. Kalp and Virginia M. Kalp, his wife, AND Glenylyn E. Kalp and Audrey J. Kalp

*to*

## DORSO LP

Date of Lease  7-6-2006

No. of Acres  123.70

Township of  Donegal

County of  Westmoreland

Commonwealth of Pennsylvania

### RECORDER'S DATA

Received for Record .........................................., 20_____

Recorded.........................................., 20_____

In..................Book, Volume..................Page..................

..........................................................Recorder

of ..........................................................Pennsylvania



Instr:200801220002711    01/22/2008
P.1 of 6    F:$23.00    8:38AM
Toe Murphy    T20080002756
Westmoreland County RecorderP



EXHIBIT
A

# OIL AND GAS LEASE

MADE and entered into the 30th day of June , A. D. 2006, by and between
Galen E. Kalp and Virginia M. Kalp, his wife, as to their one-half undivided interest of 1171 Route 711 Stahlstown, PA 15687, and
Glenlyn E. Kalp and Audrey J. Kalp, his wife, as to their one-half undivided interest of 200 Beech Drive Ligonier, PA 15658
of_____,
party/parties of the first part, hereinafter called the Lessor, and **DORSO LP**, Wexford Professional Building 1, Suite 1300, 11676 Perry Highway, Wexford, Pennsylvania 15090, party of the second part, hereinafter called the Lessee,

**WITNESSETH:** That the Lessor, for and in consideration of the sum of One ($1.00) Dollar in hand well and truly paid by the Lessee, the receipt whereof is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the Lessee to be paid, kept and performed, has leased and let and by these presents does lease and let unto the Lessee for the purpose of drilling and operating for and producing oil and gas, and for the further purpose and with the exclusive right in the Lessee, as it may see fit to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in and under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, with the right to open, repair, maintain and use a roadway or roadways to wells or well locations on this or other lands, the right to conduct geological and geophysical surveys and explorations and the right to construct, lay, maintain, operate, change and remove pipe lines, telephone and telegraph lines, compressors and all other appliances and structures on, over and through said lands, and with all other rights and privileges, including free oil, gas, gasoline and water from the land, necessary or convenient for the operation of this land alone or conjointly with other lands for the transportation of oil or gas produced from said land or other lands or for introducing, storing or withdrawing gas from this land or other lands, and to transport by pipelines or otherwise across and through said lands oil and gas and their constituents from the subject and other lands, regardless of the source of such production or the location of such wells, which right to transport production from other properties across the leasehold premises shall survive the term of this lease for so long as the transportation of such production may be desired by the Lessee. In the event that the Lessee constructs or installs a pipeline, road, meter site or other equipment on the leased premises for production or transportation of oil or gas from adjacent lands and prior to the drilling of a well on the leased premises, then the Lessee shall pay the Lessor for such construction or installation at the rate of Two Hundred Fifty Dollars ($250.00) per meter site and/or One Dollar ($1.00) per linear foot for roads and/or pipeline(s).

Said leased land is situate in Donegal Township, Westmoreland County, in the Commonwealth of Pennsylvania, bounded substantially, now or formerly, by the following lands:

North: R. Florek
East: Lois
South: R. Hutchinson
West: Commonwealth of Pennsylvania

And further identified on the tax assessment maps of said county as Map/Parcel or Block/Lot Number(s): 46/7/39 ,
containing One Hundred Twenty Three and seven tenths (123.70) acres, more or less. All of the oil produced and recovered and all of the gas (subject to the reservation or exception of gas for Lessor's own use as hereinafter set forth) produced and recovered under the terms of this lease are hereby granted, bargained and sold unto the said Lessee. Lessor agrees that Lessee may enter upon the leased premises, search for and clean out any abandoned oil or gas well, and such well shall then be considered to have been drilled under the terms of this lease and the same may be properly plugged and abandoned again or refitted and utilized by Lessee for the production or storage of gas. The leased premises may be fully and freely used by the Lessor for farming or other purposes, excepting such parts as are used by the Lessee in operating hereunder. Lessee further agrees to pay Lessor for any damage to growing crops, trees and fences, caused by Lessee in operating this lease.

1. **LESSOR'S COVENANTS.** Lessor hereby covenants that he is seized of an indefeasible fee simple estate in the land hereinbefore described, together with all the underlying oil and gas, and that he will forever warrant and defend the leasehold estate hereby demised unto the Lessee against the lawful claims and demands of all persons whomsoever, and that Lessee shall have the exclusive, full, free and quiet possession of said described premises for the purposes and during the term herein set forth. Lessor further agrees that the Lessee at its option may pay and discharge, when defaulted, any taxes, mortgages or other liens existing levied or assessed on or against the above described lands, and in the event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty or rentals accruing hereunder.

2. **TERM.** It is agreed that this lease shall remain in force for the term of_____Five_____( 5 ) years from the effective date of July 6, 2006, 2006, and as long thereafter as the above-described land, or any portion thereof of any other land pooled or unitized therewith, as provided in paragraph 3 hereof, is operated by the Lessee in the search for or production of oil or gas or as long as gas is being stored, held in storage, or withdrawn from the premises by the Lessee. The completion of a well on the premises, which is unproductive of oil or gas in paying quantities, shall be considered the equivalent of and regarded as the tender of delay rental for a period of one (1) year thereafter, at which time Lessee may resume payments of delay rentals. It is agreed that the cessation of production from wells on the leased premises or upon other land unitized therewith after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage of gas prior to the plugging and abandonment of wells from which oil or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises and that its determination shall be final and conclusive. This lease shall become null and void for failure to pay rental for any period when same shall become due and payable.

3. **UNITIZATION.** Lessee is hereby granted the right to pool and unitize the strata under all or any part of the land described above with any other lease or leases, land or lands, mineral estates, or any of them whether owned by Lessee or others, so as to create one or more drilling or production units. Such drilling or production units shall not exceed 640 acres in extent and shall conform to the rules and regulations of any lawful government authority having jurisdiction in the premises, and with good drilling or production practice in the area in which the land is located. In the event of the unitization of the whole or any part of the land covered by this lease, Lessee shall before or after the completion of a well, record a copy of its unit operation designation in the County wherein the leased premises is located

Instr:200801220002711   01/22/2008
P:2 of 6   F:$23.00   9:38AM
Tom Murphy   T20080002756
Westmoreland County Recorder

and mail a copy thereof to the Lessor. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information or drilling operations, Lessee may at any time increase or decrease that portion of the acreage covered by this lease which is included in any drilling or production unit, or exclude it altogether, provided that written notice thereof shall be given to Lessor promptly. As to each drilling or production unit designated by the Lessee, the Lessor agrees to accept and shall receive, out of the production or the proceeds from the production from such unit, such proportion of the royalties specified herein as the number of acres out of the lands covered by this lease, which may be included from time to time in any such unit, bears to the total number of acres included in such unit. The commencement, drilling, completion of or production from a well or any portion of the unit created under the terms of this paragraph shall have the same effect upon the terms of this lease as if a well were commenced, drilled, completed or producing on the land described herein.

    4. **PAYMENT TO LESSOR.** In consideration of the premises the Lessee covenants and agrees as follows:

    **ROYALTIES:** (Oil) To deliver to the credit of the Lessor, Lessor's heirs or assigns, free of cost, in the pipe line to which Lessee may connect its wells, a royalty of the equal of one-eighth (1/8) of the value of all oil produced and saved from the leased premises.

    (Gas) To make the following payments of royalty for or on account of wells producing gas: To pay a royalty equal to one-eighth (1/8) of the value of all gas produced, saved and marketed. The time and method of marketing gas produced from any well on the leased premises and the amount thereof that shall be used or marketed within any period of time shall be entirely within the discretion of the Lessee.

    **DELAY RENTAL:** Lessee covenants and agrees to pay a rental at the rate of __Five & 00/100 Dollars__ ($ 5.00 ) per acre, or __Six Hundred Eighteen & 50/100__ ($ 618.50) annually, in advance, commencing sixty (60) days from this date as a rental for twelve (12) months until a well yielding royalty to the Lessor is drilled on the leased premises or until any sand or sands under the leased premises is utilized for the storage of gas and rental for said storage becomes payable as hereinafter provided; any rental paid for time beyond the date of completion of a well yielding royalty shall be credited upon the first royalty due upon the same. It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid and to be paid constitute adequate compensation for such privilege.

    **PAYMENTS FOR STORAGE PRIVILEGES:** In full compensation for the storage rights herein granted and in lieu of all delay rental or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Ten Dollars ($10.00) per acre per annum, payable annually in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Five Hundred Dollars ($500.00) per well, payable annually in advance, as long as such well shall be so utilized; subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization or a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same. Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas and if the gas storage stratum or gas strata in such wells have not been depleted to the extent commercially feasible, Lessee will pay to Lessor the amount equal to that which would be paid as royalty on the sale of the remaining commercially recoverable gas therein underlying the premises at the then current market price without discount for the period required for recovery.

    5. **WARRANT.** Lessor hereby warrants that he is not currently receiving any bonus, rental, production royalty or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject premises, and that there have been no wells drilled upon the subject premises or upon other lands with which the subject premises have been combined in a drilling or production unit.

    6. **GAS EXCEPTED.** Lessor hereby excepts and reserves, from any well on said land producing gas, two hundred thousand (200,000) cubic feet of gas per year, or such part thereof as Lessor requires for his own use for heat and light in one dwelling house on said land, at Lessor's own risk; subject, however, to the use, operation, pumping and right of abandonment by Lessee of its wells and pipe lines on the premises. Lessor may at his own expense and upon written application, secure such gas by a service line laid to and connected either to any such well on said land or to Lessee's pipe line leading from such well to market, the point of connection to be designated by Lessee. If Lessor in any year uses gas in excess of the quantity reserved or excepted, Lessor shall pay for the same at the local prevailing price for gas for domestic use. In case of default in payment for gas used in excess of two hundred thousand (200,000) cubic feet, Lessee is hereby authorized to deduct the amount thereof from any royalty or other payments that are then due, or may later become due, under the terms of this lease, but Lessee assumes no obligation to furnish Lessor with gas in excess of the quantity reserved or excepted. The measurement and regulation shall be by meter furnished by Lessee and regulators furnished by Lessor and set at the tap on the well or line. If Lessor's use of the gas herein reserved at any time interferes with Lessee's operation of the well, Lessor agrees, at the option of Lessee and after receipt of written notice from Lessee, to discontinue the use of the gas reserved and to accept, in lieu thereof and in full consideration for, a payment of Three Hundred Dollars ($300.00).

    Lessor hereby acknowledges and confirms that Lessor understands, recognizes and is fully aware of the highly dangerous character of gas and its tendency to escape. Moreover, Lessor hereby acknowledges and affirms that Lessor's use of said gas hereunder is being made with a full and complete understanding of the significant risks inherent with the use of said gas, including, but not limited to, explosion and fire. Lessor covenants and agrees that Lessor's use of said gas shall be solely and exclusively at Lessor's own risk. Lessor shall gas at their own risk and in a prudent, efficient manner without committing waste of any kind, and to subscribe to and be bound by the reasonable rules and regulations of said Lessee relating to such use of gas. Lessor further covenants and agrees to indemnify and hold harmless Lessee from any and all claims, actions, suits, damages and injuries, including death, that may arise out of, or are related in any manner to, Lessor's use of said free gas.

    In the event that this lease is part of a pool or unit, as provided for in paragraph 4, only the drill site lease will be eligible for free gas. If there is more than one applicant for gas from the drill site lease, the first approved applicant will be the only applicant eligible for the free gas.

    7. **DIRECTIONS FOR PAYMENT.** All payments hereunder may be made direct to the Lessor or by check or draft payable to the order of __Galen E. Kalp and Virginia M. Kalp, mailed to 1171 Route 711 Stahlstown, PA 15687__, and Glenlyn E. Kalp and Audrey J.

Kalp, mailed to 200 Beech Drive  Ligonier, PA  15658 and mailed to _____.

8. SURRENDER. It is agreed that said Lessee may at any time remove all machinery and fixtures placed on said premises; and further, upon the payment of One Dollar ($1.00) and all amounts due hereunder, Lessee shall have the right to surrender this lease at any time as to all or any part or parts of the land covered by the same and thereupon shall be released and discharged from all payments, obligations, covenants and conditions herein contained, whereupon this lease shall be null and void as to the land in respect to which a surrender is made except that Lessee may continue to use the pipe line rights herein granted upon payment of One Dollar ($1.00) per linear foot to Lessor for right of way for the same. Lessor agrees that the recordation of a deed of surrender in the proper county, and the mailing in the Post Office of a check payable as above provided, for said sum or sums and all amounts then due hereunder, shall be accepted as full and legal surrender of the Lessee's rights under this lease, or under the portion surrendered.

9. TRANSFERS AND ADVERSE INTERESTS. In case of a conveyance of all or part of the premises leased, Lessee may continue to make all payments to Lessor until furnished with the original or a certified copy of any such deed of conveyance or other documents or proof to enable Lessee to identify the land conveyed as being all or part of the leased land or on written notice of any such conveyance, may hold all payments until furnished with such copy and other documents and proof, and shall apportion the delay rental, storage rental and royalty, in case of any division, according to acreage. The Lessee shall have the right to assign and transfer the within lease in whole or in part and Lessor waives notice of any assignment of transfer of the within lease. This lease shall not be forfeited for Lessee's failure to pay any rentals or royalties until Lessee has received written notice by registered mail of such default and shall fail, for a period of thirty (30) days after receipt of such notice, to pay same. Lessor agrees that when and if the within lease is assigned the Lessee herein shall have no further obligations hereunder.

Per paragragh 6, Lessor shall have the right to purchase any domestic use gas over the alloted two-hundred thousand (200,000) cubic feet at well head price, and snd paragraph 6 be herein ammended from "local prevailing price for gas for domestic use."

_____

It is agreed that all terms, conditions, limitations and covenants between the parties hereto shall extend to their respective heirs, successors, personal representatives and assigns, that the entire contract and agreement between Lessor and Lessee is embodied herein, and that no verbal warranties, representations or promises have been made or relied upon by Lessor or Lessee supplementing, modifying or as an inducement to this agreement.

IN WITNESS WHEREOF the parties to this agreement have hereunto set their hands and seals the day and year first above written.

WITNESS:  

LESSOR:

_____ /s/ Galen E. Kalp _____ (SEAL)
Galen E. Kalp

_____ /s/ Virginia M. Kalp _____ (SEAL)
Virginia M. Kalp

_____ /s/ Glenlyn E. Kalp _____ (SEAL)
Glenlyn E. Kalp

_____ /s/ Audrey J. Kalp _____ (SEAL)
Audrey J. Kalp

WITNESS: /s/

LESSEE:  DORSO LP

By: /s/ George O. Scott
    George O. Scott
Its:  Partner

Revised 1/06

Instr:200801220002711   01/22/2008
P:4 of 6       F:$23.00    9:39AM
Tom Murphy              T20080002755
Westmoreland County RecorderP

ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA )
COUNTY OF __Westmoreland__ )

Before me, __Peter McElwain__, a Notary Public, in and for said County and State, on this day personally appeared __Galen E. Kolp and Virginia M. Kolp, his wife__, who acknowledged to me that __they__ did sign the foregoing instrument and that the same is their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at __Donegal, PA__, this __6th__ day of __July__, __2006__.

_____
Notary Public

My Commission Expires: __1/13/2009__

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Peter McElwain, Notary Public
Forest Hills Boro, Allegheny County
My Commission Expires Jan. 13, 2009


ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA )
COUNTY OF __WESTMORELAND__ )

Before me, _____, a Notary Public, in and for said County and State, on this day personally appeared __Glenlyn E. Kolp and Audrey J. Kolp, his wife__, who acknowledged to me that __they__ did sign the foregoing instrument and that the same is their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at __6:15 PM__, this __6th__ day of __July__, __2006__.
__Donegal, PA__

_____
Notary Public

My Commission Expires: __1/13/2009__

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Peter McElwain, Notary Public
Forest Hills Boro, Allegheny County
My Commission Expires Jan. 13, 2009


CORPORATE ACKNOWLEDGMENT

COMMONWEALTH/STATE OF __PENNSYLVANIA__ )
COUNTY OF __ALLEGHENY__ )

On this the __12TH__ day of __JULY__, __2006__, before me, __VALERIE B. BAKER__, the undersigned officer, personally appeared __George O. Scott__, and acknowledged himself to be __Partner__ of __DORSO LP__, a Pennsylvania limited partnership, and that he/she, as such __Partner__, being authorized to do so, did execute the foregoing instrument for the purpose therein contained by signing the name of the __limited partnership__ by himself as __Partner__.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: __March 1, 2010__

NOTARIAL SEAL
Valerie B. Baker, Notary Public
Wexford Twp., Allegheny County
My commission expires March 1, 2010

Instr: 200801220002711   01/22/2008
P:5 of 6   F:$23.00   9:38AM
Tom Murphy   T20080002796
Westmoreland County Recorder

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF REVENUE
BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG PA 17128-0603

# REALTY TRANSFER TAX STATEMENT OF VALUE

See Reverse for Instructions

Instr:200801220002711   01/22/2008
P:6 of 6   F:$23.00   9:38AM
Tom Murphy   T20080002756
Westmoreland County Recorder P

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value/consideration is not set forth in the deed, (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. A Statement of Value is not required if the transfer is wholly exempt from tax based on: (1) family relationship or (2) public utility easement. If more space is needed, attach additional sheet(s).

## A. CORRESPONDENT – All inquiries may be directed to the following person:

Name: Walter C. Phillips
Dorso LP
Telephone Number: 724-934-7710
Street Address: 11676 Perry Highway – Suite 1300
City: Wexford   State: PA   Zip Code: 15090

## B. TRANSFER DATA

Date of Acceptance of Document: 7/6/2006

Grantor(s)/Lessor(s): Galen E. Kalp, Virginia M. Kalp, ~~Glenylyn E. Kalp, Audrey J. Kalp~~
Street Address: 1171 Rt. 711
City: Stahlstown   State: PA   Zip Code: 15687

Grantee(s)/Lessee(s): Dorso LP
Street Address: 11676 Perry Hwy., Suite 1300
City: Wexford   State: PA   Zip Code: 15090

## C. PROPERTY LOCATION

Street Address: 
City, Township, Borough: Donegal Township
County: Westmoreland
School District: Mt. Pleasant Area
Tax Parcel Number: 46-7-39

## D. VALUATION DATA

| 1. Actual Cash Consideration | 2. Other Consideration | 3. Total Consideration |
|---|---|---|
| N/A | + N/A | = N/A |
| 4. County Assessed Value | 5. Common Level Ratio Factor | 6. Fair Market Value |
| N/A | X N/A | = N/A |

## E. EXEMPTION DATA

1a. Amount of Exemption Claimed: N/A
1b. Percentage of Interest Conveyed: N/A

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____ (Name of Decedent) _____ (Estate File Number)

☐ Transfer to Industrial Development Agency.

☐ Transfer to a trust. (Attach complete copy of trust agreement identifying all beneficiaries.)

☐ Transfer between principal and agent. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the Commonwealth, the United States and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____, Page Number _____.

☐ Corrective or confirmatory deed. (Attach complete copy of the prior deed being corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

☒ Other (Please explain exemption claimed, if other than listed above.) This is an exempt transaction not subject to the Realty Transfer Tax pursuant to Section 1102-C.2 of Act #77 of 1986.

See attached – Oil and Gas Lease

Under penalties of law, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

Signature of Correspondent or Responsible Party: [signed]
Date: 1/17/2008

FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH APPLICABLE DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.